IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JUDEA R., <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, Commissioner of Social Security, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER <br><br><br> Case No. 4:25-cv-00028-PK <br><br> Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff's appeal from the decision of the Social Security Administration denying her application for disability insurance benefits and supplemental security benefits.[1] The Court affirms the administrative ruling.

I.  STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether the findings are supported by substantial evidence and whether the correct legal standards were applied.[2] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[3] The ALJ is required to consider all of the evidence, although the ALJ is not required to discuss all of the evidence.[4] If supported by substantial evidence, the Commissioner's findings are conclusive and must be

---

[1] Docket No. 11, filed June 10, 2025.

[2] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[3] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[4] *Id.* at 1009–10.

affirmed.[5] The Court must evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[6] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[7]

## II. BACKGROUND

A.   PROCEDURAL HISTORY

On February 24, 2022, Plaintiff applied for disability insurance benefits and for supplemental security income benefits, both alleging disability beginning on June 26, 2021.[8] The claim was denied initially and on reconsideration.[9] Plaintiff then requested a hearing before an ALJ,[10] which was held on December 13, 2023.[11] On February 28, 2024, the ALJ found that Plaintiff was not disabled.[12] The Appeals Council denied review on February 3, 2025,[13] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[14]

On March 19, 2025, Plaintiff filed her complaint in this case.[15] On the same date both parties consented to a United States Magistrate Judge conducting all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the

---

[5] *Richardson*, 402 U.S. at 390.

[6] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[7] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[8] R. at 262–68.

[9] *Id*. at 74–103, 104–29.

[10] *Id*. at 155–56.

[11] *Id.* at 49–73.

[12] *Id.* at 14–41.

[13] *Id.* at 1–6.

[14] 20 C.F.R. §§ 416.1481, 422.210(a).

[15] Docket No. 1.

Tenth Circuit.[16] The Commissioner filed an answer and the administrative record on May 12, 2025.[17]

Plaintiff filed her Opening Brief on June 10, 2025.[18] The Commissioner's Answer Brief was filed on July 10, 2025.[19] Plaintiff filed her Reply Brief on July 25, 2025.[20]

B.     MEDICAL EVIDENCE[21]

Plaintiff received a diagnosis for fibromyalgia in 2021.[22] She was found to have tenderness in her arms, chest, back, wrists, and elbows.[23] She also exhibited hypermobile joints.[24] Plaintiff was put on medical cannabis by her pain management provider, and she reported that the cannabis resulted in about a fifty percent improvement in her pain.[25]

In July of 2021, Plaintiff presented to the emergency room due to generalized pain and suicidal ideation,[26] and she was subsequently admitted to the mental health unit of the hospital.[27] At a follow-up regarding the hospitalization, Plaintiff stated that she received ketamine as an

---

[16] Docket No. 5.

[17] Docket No. 10.

[18] Docket No. 11.

[19] Docket No. 13.

[20] Docket No. 14.

[21] Plaintiff's argument focuses on her fibromyalgia, and the Court's recitation of the medical record will do the same.

[22] R. at 522.

[23] *Id.* at 521.

[24] *Id.* at 521–22.

[25] *Id.* at 504.

[26] *Id.* at 440.

[27] *Id.* at 443.

inpatient and that she felt it helped,[28] and she later received several ketamine treatments outpatient.[29] Plaintiff's medical provider removed Plaintiff from duloxetine and started her on amitriptyline, as well as trazodone for sleep.[30] After a visit with her rheumatologist, low dose naltrexone was also added.[31] Overall, Plaintiff consistently reported good benefit from medications throughout the record.[32] Plaintiff reported that her pain improved with gabapentin[33] and that her sleep improved with trazodone.[34] In December 2022, Plaintiff reported that low dose naltrexone adequately managed her pain.[35]

However, as she was treated for her anxiety and depression, Plaintiff reported that her chronic pain contributed to worsening moods.[36] Plaintiff also reported ongoing fatigue throughout the day,[37] as well as brain fog,[38] and Plaintiff was noted to be morbidly obese.[39] Plaintiff consistently attended pain management appointments,[40] and she attended physical therapy for two months in 2023 because her fibromyalgia was causing dizziness, muscle

---

[28] *Id*. at 472.
[29] *Id*. at 644–48.
[30] *Id*. at 472.
[31] *Id*. at 500.
[32] *Id*. at 809, 814, 819, 825, 831, 837, 1085.
[33] *Id*. at 483.
[34] *Id*. at 831.
[35] *Id*. at 1074.
[36] *Id*. at 1085.
[37] *Id*. at 1087, 1092.
[38] *Id*. at 867.
[39] *Id*. at 504, 1096.
[40] *Id*. at 851–74, 1074–76.

weakness, and lack of coordination.[41] Potentially relevant to Plaintiff's fibromyalgia, Plaintiff exhibited symptoms and antibodies consistent with Sjogren's syndrome[42] and received treatment for alopecia.[43] Additionally, throughout 2022, Plaintiff received treatment for chest pain and pulmonary issues,[44] as well as for tachycardia.[45] Plaintiff was assessed with postural orthostatic tachycardia syndrome in 2023.[46]

C.   HEARING TESTIMONY

Before the ALJ, Plaintiff testified that she has a degree in communications with an emphasis in digital film.[47] She was let go from her last job because of COVID and has not since been called back.[48] After, she actively looked for work for about a year and a half while she was on unemployment, but she stopped looking when it got to a point where she wasn't able to think about working.[49]

Plaintiff testified that she lives with her mom, two of her siblings, and her brother's fiancé.[50] She suffers from panic attacks, as well as suicidal ideation, and it is difficult for her to get out of bed or go outside.[51] She was able to cope better with her anxiety when she was

---

[41] *Id*. at 1123–1182.
[42] *Id*. at 492.
[43] *Id*. at 754–72, 784–89, 1061–67, 1111–18, 1221–42.
[44] *Id*. at 958–71.
[45] *Id*. at 1053–60, 1079–82, 1254–56.
[46] *Id*. at 1422.
[47] *Id.* at 54.
[48] *Id*. at 56.
[49] *Id*. at 55–56.
[50] *Id*. at 55.
[51] *Id*. at 59.

working.[52] Plaintiff testified that she has difficulty getting dressed and bathing every day and that she gets too little sleep.[53] Her friends visit her at her house, and she's active on chronically ill social media.[54] She drives to her doctor's appointments, and she goes out to eat and to the movies a few times a month.[55] She does yoga and stationary cardio in her living room.[56] As for household chores, she feeds her dog and will sometimes do her laundry.[57]

D.   THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 26, 2021, the alleged onset date.[58] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: anxiety, depression, and obesity.[59] At step three, the ALJ determined that Plaintiff did not meet or equal a listed impairment.[60] At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work with certain limitations.[61] Then, the ALJ concluded that Plaintiff was unable to perform

---

[52] *Id.*
[53] *Id.* at 63.
[54] *Id.* at 60.
[55] *Id.*
[56] *Id.* at 61.
[57] *Id.* at 62.
[58] *Id.* at 20.
[59] *Id.* at 20–26.
[60] *Id.* at 26–29.
[61] *Id.* at 29–38.

any past relevant work.⁶² At step five, the ALJ found that there were jobs that exist in significant numbers that Plaintiff could perform and, therefore, she was not disabled.⁶³

## III. DISCUSSION

Plaintiff raises a single issue in her brief: whether the ALJ erred in finding that Plaintiff's fibromyalgia was not a medically determinable impairment. Defendant argues that even if the ALJ erred at step two, the error was harmless because the ALJ made an alternative finding that Plaintiff's fibromyalgia was a non-severe medically determinable impairment and considered Plaintiff's fibromyalgia at step four.

SSR 12-2p "provides guidance on how [the Commissioner] develop[s] evidence to establish that a person has a medically determinable impairment . . . of fibromyalgia, and how [the Commissioner] evaluate[s] [fibromyalgia] in disability claims and continuing disability reviews under . . . the Social Security Act."⁶⁴ To establish that fibromyalgia is a medically determinable impairment under SSR 12-2p: "(I) a physician must have diagnosed fibromyalgia; (II) the physician must have provided evidence described by either (A) the 1990 American College of Rheumatology ('ACR') criteria, or (B) the 2010 ACR Preliminary Diagnostic Criteria; and (III) the physician's diagnosis must not be inconsistent with other evidence in the record."⁶⁵ The 1990 ACR criteria requires a claimant to show:

> (1) A history of widespread pain – that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the

---

⁶² *Id.* at 38–39.

⁶³ *Id.* at 39–40.

⁶⁴ SSR 12-2p, 2012 WL 3104869, at *1 (July 25, 2012).

⁶⁵ *Ann S. v. Kijakazi*, No. 2:20-CV-00841-JCB, 2022 WL 204596, at *2 (D. Utah Jan. 24, 2022).

7

> cervical spine, anterior chest, thoracic spine, or low back) – that has persisted (or that persisted) for at least months. The pain may fluctuate in intensity and may not always be present.
> (2) At least 11 positive tender points on physical examination . . . The positive tender points must be found bilaterally . . . and both above and below the waist. . . .
> (3) Evidence that other disorders that could cause the symptoms or signs were excluded.[66]

In the alternative, the 2010 ACR criteria requires a claimant to show:

> (1) A history of widespread pain . . .;
> (2) Repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and
> (3) Evidence that other disorders that could cause these repeated manifestations of symptoms, signs or co-occurring conditions were excluded.[67]

Plaintiff seems to argue that because the ALJ did not explicitly reference SSR 12-2p in the decision, the ALJ did not apply that SSR. This, however, "rests on a misunderstanding of the difference between a requirement for the ALJ to consider and a requirement for him to articulate his consideration of certain standards or evidence."[68] As Defendant correctly notes, "[t]here is no requirement that an ALJ articulate, state or cite, each legal standard which he applies."[69] And a review of the ALJ's decision suggests that the ALJ did consider at least Part A of SSR 12-2p, the 1990 ACR criteria. At step two, the ALJ acknowledged that complaints of chronic pain due to fibromyalgia were documented in the record but also observed that Plaintiff's physical and neurological examinations were normal and unremarkable, with no tender/trigger point testing.

---

[66] SSR 12-2p, 2012 WL 3104869, at *2–3.

[67] *Id.* at *3.

[68] *Kelli Lynne S-S. v. Kijakazi*, No. CV 20-1207-JWL, 2021 WL 4860562, at *7 (D. Kan. Oct. 19, 2021).

[69] *Id.*

8

"Under the 1990 criteria, a lack of tender points is sufficient to find the fibromyalgia diagnosis unsupported; the ALJ need not consider other clinical findings."[70]

Nonetheless, the Court agrees with Plaintiff that it does not appear the ALJ evaluated the repeated manifestation of six or more fibromyalgia signs, symptoms, and co-occurring conditions that would guide an analysis through Part B of SSR 12-2p, the 2010 ACR criteria. This was error because, as the record reflects, Plaintiff exhibited six or more of such manifestations. As Plaintiff argues, Plaintiff suffered from depression and anxiety,[71] fatigue and insomnia,[72] hair loss,[73] shortness of breath,[74] and dry mouth.[75] The Commissioner asserts that the record suggests some of these manifestations may be attributable to conditions other than fibromyalgia, such as Plaintiff's hypermobile joints, but the Court cannot resolve that issue given the ALJ's lack of analysis. "Where the trigger points were not present under Part A, but evidence was in the record of Part B criteria, Part B should also have been considered."[76]

Although the ALJ erred in failing to consider Part B of SSR 12-2p, the question remains as to whether this error was harmless. Generally, "[u]nlike an error in determining an

---

[70] *Sara M. v. Kijakazi*, No. 2:22-CV-000614, 2023 WL 5938105, at *3 (D. Utah Sept. 12, 2023).

[71] R. at 440–44, 472, 809, 846, 1085.

[72] *Id*. at 1087, 1091–93.

[73] *Id*. at 754–72, 784–89, 1061–67, 1111–18, 1221–42.

[74] *Id*. at 958–71.

[75] *Id*. at 1080, 1087, 1091.

[76] *Teresa P. v. Kijakazi*, No. 1:21-CV-00067-CMR, 2022 WL 3597440, at *3 (D. Utah Aug. 22, 2022).

impairment's severity at step two, which is not reversible if the ALJ proceeds further to evaluate other impairments, a failure to find an impairment medically determinable is"[77] not harmless error "because the ALJ is only required to consider medically determinable impairments in the RFC at step four, whether severe or not."[78] However, "even then, such error would be obviated if the ALJ considered the non-medically determinable impairment in assessing the RFC."[79]

The ALJ found Plaintiff's fibromyalgia not medically determinable, but the ALJ also made an alternative finding that to the extent Plaintiff's fibromyalgia may be considered medically determinable, it is non-severe. Plaintiff does not dispute this alternative finding other than arguing that in making the finding the ALJ failed to properly consider SSR 12-2p. But any such error in determining a medically determinable impairment's severity is harmless if the ALJ found other severe impairments, continued the analysis, and properly considered the non-severe impairment in determining Plaintiff's RFC. Even if the ALJ had not made this alternative finding, the ALJ's error in finding Plaintiff's fibromyalgia not medically determinable may also be obviated if the ALJ properly considered Plaintiff's fibromyalgia at step four.

Here, the ALJ considered Plaintiff's fibromyalgia at step four. SSR 12-2p provides that in determining a claimant's RFC, "[f]or a person with [fibromyalgia], [the Commissioner] will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'"[80] As Plaintiff admits, the

---

[77] *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016) (citation omitted).

[78] *Id.*

[79] *Id.*

[80] SSR 12-2p, 2012 WL 3104869, at *6.

10

ALJ provided an extensive summary of the evidence, noting several findings of fibromyalgia and chronic pain and discussing symptoms possibly associated with fibromyalgia—although Plaintiff contends that the ALJ did not consider Plaintiff's fatigue and difficulty sleeping, the ALJ did in fact mention Plaintiff's reports of such. However, the ALJ found that the intensity and limiting effects of Plaintiff's symptoms were not entirely consistent with the longitudinal record. In doing so, the ALJ considered multiple factors. "[A]lthough the existence or severity of fibromyalgia may not be determinable by objective medical tests, . . . the physical limitations imposed by the condition's symptoms can be objectively analyzed."[81] To that end, the ALJ discussed that Plaintiff's examinations were consistently normal and unremarkable such that Plaintiff enjoys a normal range of motion in her joints, possesses normal strength, and walks and moves without much difficulty despite occasional reports of Plaintiff's use of a cane. Plaintiff's mental status examinations were similarly unremarkable. The ALJ also pointed to evidence showing that medication alleviates and effectively manages Plaintiff's symptoms. Additionally, the ALJ discussed other evidence suggesting that Plaintiff goes out to eat and to the movies a couple of times a month; that Plaintiff is able to stay active, doing yoga and stationary cardio; that Plaintiff stopped working due to reasons unrelated to her alleged disability; and that Plaintiff testified that when she was working, her depression was not as bad. Accordingly, the ALJ's decision was supported by substantial evidence, and indeed, Plaintiff does not dispute the sufficiency of the

---

[81] *Tarpley v. Colvin*, 601 F. App'x 641, 643 (10th Cir. 2015).

RFC assessment or argue that any additional limitations would be necessary. Plaintiff has thus failed to demonstrate that the alleged error was harmful.[82]

Therefore, although the ALJ erred at step two by failing to consider Part B of SSR 12-2p, this error was harmless because the ALJ considered Plaintiff's fibromyalgia at step four and the ALJ's determination was supported by substantial evidence.

## IV.  CONCLUSION

Having made a thorough review of the entire record, the Court affirms the Commissioner's decision.

DATED this 5th day of August, 2025.

BY THE COURT:

PAUL KOHLER
United States Magistrate Judge

---

[82] *Lonny S. v. Saul*, No. 2:18-CV-00767-PMW, 2019 WL 4758047, at *3 (D. Utah Sept. 30, 2019) ("Plaintiff has not identified any additional limitations that might result from his PTSD; and thus, fails to demonstrate the alleged error was harmful.").